IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:14-667-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| TRACY MITCHELL McCANTS | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence (ECF No. 1487) pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A). Seeking compassionate release, the defendant alleges that his mother-in-law is very sick and that she is seeking foster care placement for his three children because she no longer wants the responsibility to care for them.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant did not reply to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

2

is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (I) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden

3

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

4

their behalf.  The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).  *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has exhausted his administrative remedies.  Thus, the court will proceed to review the matter on the merits.

DISCUSSION

*The Defendant's Family Situation*

In his motion (ECF No. 1487), the defendant relies only on family concerns to support his claim of an extraordinary and compelling reason for consideration of release.  In particular, the defendant alleges that his mother-in-law is very sick and that she is seeking placement of his three children in foster care because she no longer wants the responsibility to care for them.  He also notes that two of his children are having disciplinary problems.

The defendant states that the mother of his three children (ages 11, 12, and 17) passed away two years prior to his arrest in October 2014 and his current incarceration which began in November 2015.  The children  are presently in the care of their maternal grandmother who is having health issues.  The defendant has not provided any support for these claims.

The Presentence Report (PSR) (ECF No. 787), prepared in connection with the defendant's November 5, 2015 sentencing, notes that the defendant was 31 years old at the time of his conviction.  The defendant reported that he married a woman in early 2010 or

2011 and they had one child, and cared for the woman's son from a prior relationship.   The defendant had 4 children with Shena Mobley and had sole custody of them when Ms. Mobley passed away in October 2012.   He also has one daughter from another relationship.

Both of the defendant's parents are deceased.   He has two siblings who live in Columbia, South Carolina.

The defendant is now 38 years old and is scheduled to be released from the BOP in September 2023.  He has served approximately 93 months of his 120-month sentence.

The government notes, and this court agrees, that the defendant has well-founded and legitimate concerns for the care of his children while he is incarcerated.   However, the defendant has not demonstrated that the concern is extraordinary and compelling.

The defendant wrote that two years prior to his October 2014 arrest, the mother of three of his children passed away and that the defendant assumed sole custody of the children at that time.   However, the drug distribution activity that led to the instant conviction occurred throughout 2013 while the defendant had sole custody of his children.

While the court is sympathetic to the defendant's children, who will ultimately suffer the most from the defendant's criminal actions, the court does not find that releasing the defendant at this time would be appropriate.

*The Defendant's Medical Condition*

Although not raised in his original motion, it appears that the defendant sought release from the Warden based on his alleged obesity.  Attached to the government's response is a

copy of an Inmate Request Form to BOP Staff from the defendant to the Warden dated February 2, 2021, asking for his sentence to be reduced  as a result of his obesity.

Attached to the *defendant's* motion, however, is a request to the Warden dated July 14, 2021 that only seeks release due to the family concerns of his children and not his obesity.  Because the defendant has not provided medical records to corroborate this assertion of obesity, and because he did not specifically raise such issue in his motion for compassionate release, the court will not consider this as a factor supporting his request.

Even if this court were to find that the defendant had demonstrated an extraordinary and compelling reason for consideration of his release, the court would be constrained to deny the defendant's motion.

Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors and the defendant's post-sentencing conduct while incarcerated.

### Factors Under § 3553(a)

1.  *Nature and Circumstances of the Offense*.   The defendant was identified as a participant in a large drug trafficking conspiracy involved in the acquisition and distribution of multi-ounce to multi-kilogram quantities of cocaine and crack cocaine throughout the Midlands area of South Carolina. Through the use of intercepted wiretap communications and information provided by cooperating witnesses, the defendant was determined to have obtained quantities of cocaine and crack cocaine which he, in turn, distributed to several

7

individuals.

The defendant was one of 21 individuals named in a 2-Count Superseding Indictment filed in the District of South Carolina in November 2014, charging conspiracy to possess with intent to distribute and distribution of more than 280 grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851.[2] The government filed an Information pursuant to 21 U.S.C. § 851 notifying the defendant that he was subject to enhanced penalties as a result of his 2007 state conviction for possession of cocaine for which he was sentenced to one year.

Pursuant to a written Plea Agreement, the defendant pleaded guilty to Count 1. The Plea Agreement (ECF No. 495) contained a stipulation that if the defendant complied with the terms of the agreement and provided cooperation, the government would withdraw at sentencing the one conviction in the § 851 enhancement so that the defendant's statutory sentence range would only be a mandatory minimum term of imprisonment of 10 years and a maximum term of life.

The Presentence Report (PSR) (ECF No. 787) indicated that the defendant's total offense level was 27 and his criminal history category was VI which resulted in a proposed mandatory minimum sentence of 240 months. Because the government withdrew the § 851 enhancement, and this court utilized a 1:1 ratio between crack and cocaine, the defendant's

---

[2]    Count 1 charged that the conspiracy began at least in or around 2008 and continued thereafter up to an including the date of the Superseding Indictment filed in November 2014.

Guideline range became 130 to 162 months. After the court granted the defendant's unopposed motion for a variance, this court ultimately sentenced the defendant to a term of imprisonment of 120 months—below the Guideline range. The defendant did not appeal his judgment and conviction.

2. *History and Characteristics of the Defendant.* The defendant was 31 years old at the time of this conviction. As noted previously in this order, the defendant reported that he married an individual in early 2010 or 2011 and they had one child, plus her son from a prior relationship. The defendant had 4 children with Shena Mobley and had sole custody of them when Ms. Mobley passed away in October 2012. He also has a daughter from a relationship with another individual.

Both of the defendant's parents are deceased. He has two siblings who live in Columbia, South Carolina.

The defendant is now 38 years old and is scheduled to be released from the BOP in September 2023. He has served approximately 93 months of his 120-month sentence.

The defendant has prior felony state convictions for accessory after the fact of armed robbery; possession of cocaine, 1st offense; unlawful carrying of a pistol; and habitual traffic offender. In addition to his felony convictions, the defendant has misdemeanor convictions for two counts of simple possession of marijuana; driving without a license; two counts of giving false information; two counts of driving under suspension; careless or negligent driving; driving under suspension, 2nd offense; disregard stop sign; driving under

suspension, 3rd or more; and two counts of child passenger restraint violation.

*Post-Sentencing Conduct*

Commendably, the defendant has achieved his GED while incarcerated and he has completed 350 hours of CDL courses. He states that he has taken classes in Victim Impact, Finance, Drug Abuse, Parenting, and other classes. He also states that he has worked at the prison since he was incarcerated.

Unfortunately, the defendant has collectively lost 84 days good time credits due to a January 2022 infraction for engaging in sexual acts, a June 2021 infraction for the same offense, and an April 2020 infraction for possessing drugs/alcohol. These recent disciplinary infractions are of concern to this court.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence. Suffice it to say that this court considers the defendant's crimes to be substantial.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

CONCLUSION

In sum, the § 3553(a) factors discussed above strongly militate against a sentence reduction at this time. The death of the defendant's spouse occurred prior to his arrest in this case and prior to his present incarceration and the crimes he committed in this case were done while his children were in his custody. Although the court recognizes the defendant's admirable desire to care for his children, this fact does not present an unusual factor with regard to the guardianship of his children such that an order of immediate release is appropriate.

In light of this court's investigation of the record and individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct discussed herein, the

defendant's motion (ECF No. 1487) is denied.[3]

      IT IS SO ORDERED.

September 15, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[3]  To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so.  The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g).  The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this.  See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")